# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE JUAN TORRES, ) | 1:09-CV-2079 DLB HC |
| ) | |
| Petitioner, ) | ORDER DENYING PETITION FOR |
| ) | WRIT OF HABEAS CORPUS |
| v. ) | |
| ) | ORDER DIRECTING CLERK OF THE |
| ANTHONY HEDGPETH, Warden, ) | COURT TO ENTER JUDGMENT |
| ) | |
| Respondent. ) | ORDER DENYING CERTIFICATE OF |
| ) | APPEALABILITY |

Jose Juan Torres (hereinafter "Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a judgment of the Kings County Superior Court. A jury found Petitioner guilty of Count I, kidnapping in order to commit an act of sexual penetration ( Cal. Penal Code § 209); Count II, kidnapping (Cal. Penal Code § 207(a)); Count III, forcible act of sexual penetration (Cal. Penal Code § 289(a)(1)); Count IV, commission of a lewd and lascivious act on a fifteen-year-old child (Cal. Penal Code § 288(c)(1)) . The trial court imposed a sentence of life plus eight years eight months.

Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District. The California Court of Appeal issued its opinion on September 28, 2007 and: (1) reversed Petitioner's conviction in count IV; (2) remanded the matter to the trial court with direction to dismiss count II; (3) stayed its sentence on Count III; and (4) affirmed the judgment

in all other aspects.

On January 14, 2008, Petitioner filed a habeas petition in the Kings County Superior Court, which the court denied on March 10, 2008.

On May 2, 2008, Petitioner filed a habeas petition in the Kings County Superior Court, which the court denied on June 30, 2008.

On May 27, 2008, Petitioner filed a habeas petition in the California Court of Appeal, which the court denied on June 17, 2008.

On October 15, 2008, Petitioner filed a habeas petition in the California Supreme Court, which the court denied on April 15, 2009.

On August 25, 2009, Petitioner filed the instant federal petition for writ of habeas corpus. See Doc. No. 1. On June 8, 2010, Respondent filed an answer to the petition. See Doc. No. 26. On August 5, 2010, Petitioner filed a traverse. See Doc. No. 34. The parties have consented to Magistrate Jurisdiction. See Doc. Nos. 12, 21.

## **FACTUAL BACKGROUND**[1]

Jessica lives with her parents, suffers from Down's Syndrome, and is a special education student. On January 22, 2006, when Jessica was still 15 years old, she took an early morning walk to a nearby park. FN4. Jessica stated that the sun had not yet risen and it was dark. When Jessica arrived at the park, she saw defendant, who was her neighbor and is known as Preidas, at the park. FN5 Artificial lights in the park were on.

FN4. Jessica said the park was only 30 seconds away, but Kings County Sheriff's Deputy Chris Berna explained that the park was approximately 10 minutes from Jessica's apartment by foot.

FN5. Jessica identified defendant in court. Jessica's sister testified that defendant was a neighbor, that everyone knew him as Preidas, and that he was 39 or 40 years old.

Defendant's sister testified that she is 43 years old and defendant is three or four years younger. When she saw defendant, Jessica ran through the park. Defendant chased Jessica and, after catching up to her, he grabbed Jessica's shoulders and pulled her to the ground. After pulling down Jessica's pants and underwear, defendant inserted his finger into her "privacy," Jessica's word for her vagina. Defendant put his hand on Jessica's face and tried to kiss her mouth. The two struggled on the ground. Jessica attempted to push defendant back. Defendant continued to forcibly penetrate Jessica until he fled, either

---

[1] These facts are derived from the California Court of Appeal's opinion on direct appeal issued on September 28, 2007. See People v. Torres, 2007 WL 2812582 (Cal. App. September 27, 2007). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004); Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009).

when the sun rose or when a car with its lights on drove by. Jessica said defendant did not try to kiss her anywhere else, and he did not "do anything else to any area."

Jessica started to cry, got up, fell once, and then went to her aunt's home. Deputy Berna questioned Jessica at 7:30 that morning. Jessica was visibly upset. Her eyes were watery and her voice was shaking. Deputy Berna observed an abrasion on Jessica's chin. Jessica told Deputy Berna that her chin and shoulder hurt. A photograph depicting Jessica's injuries to her chin was admitted into evidence.

Deputy Berna went with Jessica to the park. Jessica, who was recalled as a witness, testified that she told Deputy Berna defendant first grabbed her in the open area of the park and then pulled her 15 feet away to the back of the park toward a fence and behind a tree. Jessica drew X's on a photograph showing where defendant dragged her through the park. This photograph and another photograph were admitted into evidence showing the area where defendant initially attacked Jessica and showing disturbed grass, dirt, and leaves at the spot defendant dragged Jessica.

Patricia Driscoll, a registered nurse who works at Hanford Community Hospital Emergency Room, conducted a sexual assault examination of Jessica on January 22, 2006. Driscoll interviewed Jessica to get her account of what happened. Jessica has Down's Syndrome which makes her slow.  Also, Jessica's mother needed an interpreter.

Driscoll observed multiple abrasions on Jessica as well as a lot of dirt and leaves on her clothing and body. Jessica was not able to tolerate the speculum used for a vaginal examination so Driscoll could only observe Jessica's vagina externally. Driscoll saw a tear at the posterior fourchette located at the base of the vagina. Jessica had lacerations and abrasions to her knees and scratches to her body. There were dirt and leaves around the pelvic area. The results of the examination were consistent with Jessica's account of the sexual assault.

Senior Deputy Sheriff Tom Wilcox conducted a tape-recorded interview of Jessica on January 22, 2006, about 11:00 a.m. During questioning, Jessica initially said her house was two seconds from the park, then said it was 30 seconds from the park. When asked if defendant moved her, Jessica said defendant had just grabbed her and pushed her to the ground. Jessica told Wilcox that defendant placed his finger into her vagina for one to two hours.

See People v. Torres, 2007 WL 2812582, *1-3 (Cal. App. September 27, 2007).

### I.      Jurisdiction

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution and Petitioner's custody arose from a conviction in the Kings County Superior Court.  As the judicial district encompasses Kings County, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus.  See 28

U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

## II. Standard of Review

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. Lindh v. Murphy, 521 U.S. 320, 326-27 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of AEDPA and is consequently governed by its provisions. See Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)), overruled in part on other grounds, Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); see Lockyer, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006), overruled in part on other grounds, Hayward, 603 F.3d at 555. As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. Finally, this Court must consider

whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Id. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents"); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue . . . This does not mean that Ninth Circuit case law is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'"). Furthermore, the AEDPA requires that the Court give considerable

5

deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003). As the California Supreme Court's and the California Court of Appeal's decisions consisted of summary denials, the Court looks through that decision to the last reasoned decision, namely, that of June 30, 2008 Kings County Superior Court decision on habeas review. See Nunnemaker, 501 U.S. at 804.

### III. Review of Petitioner's First Claim-Ineffective Assistance of Appellate Counsel

Petitioner argues that he was denied his Sixth Amendment right to counsel. Petitioner claims that his appellate counsel on direct appeal was constitutionally ineffective for failing to argue that the evidence adduced at trial did not demonstrate "movement" of the victim, which is an element required for a conviction of Count I (kidnapping to commit an act of sexual penetration (Cal. Penal Code § 209))[2]. Petitioner maintains that the victim was attacked in a

---

[2]California Penal Code § 209 provides in relevant part:

"(a) Any person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away another person by any means whatsoever with intent to hold or detain, or who holds or detains, that person for ransom, reward or to commit extortion or to exact from another person any money or valuable thing, or any person who aids or abets any such act, is guilty of a felony, and upon conviction thereof, shall be punished by imprisonment in the state prison for life without possibility of parole in cases in which any person subjected to any such act suffers death or bodily harm, or is intentionally confined in a manner which exposes that person to a substantial likelihood of death, or shall be punished by imprisonment in the state prison for life with the possibility of parole in cases where no such person suffers death or bodily harm."

"deserted park in the early morning and dragged fifteen feet behind a tree." See Petition at 2. Petitioner argues, "The distance was minimal, there was nobody likely to be in the park that early morning, and the first sign of trouble, the attacker fled." Id. "The tree clearly did not shield them. There simply was not enough evidence for the substantial movement requirement for this offense." Id. For the reasons discussed below, the Superior Court's denial of Petitioner's ineffective assistance of counsel claim was not "objectively unreasonable."

### A. Superior Court's Decision

The Kings County Superior Court on habeas review rejected Petitioner's claim that his appellate counsel provided ineffective assistance of counsel as follows:

> In regards to whether there was sufficient evidence presented at trial to sustain a finding of "substantial movement"of the victim for purposes of Count 1, it does not appear that Petitioner's appellate counsel raised such issue on appeal.  However, testimony was provided at trial by Kings County Sheriff's Department Deputy Chris Berna confirming the victim's recollection of having been pulled behind a tree some 15 feet away from the original area of the attack. (Opening Brief, p.6, citing, 2RT 171-172; see also Respondent's Brief, p.3, citing 2 RT 159-160, 171-172).  Although Petitioner argues that 15 feet in a deserted park is insufficient to find that the movement decreased the likelihood of detection, Deputy Berna testified that [at the ] preliminary hearing that the original location of the attack was, "in an open area of the park" visible to traffic, while the area to which the victim was dragged was, "towards the back of the park" not observable from the road. (Preliminary Hearing Transcript, 11:1-12:11).  In the absence of some further specific information supporting Petitioner's theory of counsel error, the Court must assume that the testimony offered by Deputy Berna at the preliminary hearing was consistent with that offered [at] trial, and a decision by Petitioner's appellate counsel to not challenge the sufficiency of evidence presented in connection with Count 1 was without prejudice.[3]

See Petition at 20-22 (Superior Court decision dated March 10, 2008).

---

(b)(1) Any person who kidnaps or carries away any individual to commit robbery, rape, spousal rape, oral copulation, sodomy, or any violation of Section 264.1, 288, or 289, shall be punished by imprisonment in the state prison for life with the possibility of parole.

(2) *This subdivision shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense.* (emphasis added).

[3] Petitioner argues that it was improper for the Superior Court to rely upon Deputy Berna's testimony at the Petitioner's preliminary hearing. See Petition at 11. However, the Superior Court did not solely rely on Deputy Berna's testimony at the preliminary hearing but instead also relied upon Deputy Berna's trial testimony and cited to the Record Transcript, which contains Deputy Berna's relevant trial testimony.

7

B.     Applicable Law

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Id. at 687 88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690; see Wiggins v. Smith, 539 U.S. 510, 521 (2003). Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693 94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. see also Williams v. Taylor, 529 U.S. 362, 391 92 (2000); Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). In reviewing defense counsel's performance, courts "must be highly deferential" and make "every effort ... to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689.

A claim of ineffective assistance of appellate counsel is reviewed according to the same Strickland standard that is applied to trial counsel. Smith v. Robbins, 528 U.S. 259, 287 (2000); see also Cockett v. Ray, 333 F.3d 938, 944 (9th Cir. 2003). Petitioner bears the burden of establishing both components of the Strickland standard, i.e., "that counsel's advice fell below an objective standard of reasonableness, ... and that there is a reasonable probability that, but for counsel's unprofessional errors, [the petitioner] would have prevailed on appeal." Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989); see also Cockett, 333 F.3d at 944.

In Harrington v. Richter,    U.S.   ,    , 131 S. Ct. 770, 784 85, 178 L.Ed.2d 624 (2011), the Supreme Court recently stressed that "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable," which "is different from asking whether defense counsel's performance fell below Strickland's standard." "The

standards created by Strickland and § 2254(d) are both 'highly deferential' ... and when the two apply in tandem, review is 'doubly' so." Id. at 788. The Court must ask not "whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. Therefore, this Court's task under § 2254(d) is not to undertake its own Strickland analysis, but to determine whether the state court's Strickland analysis was unreasonable.

C.  Analysis

Petitioner argues that his appellate counsel was deficient because he did not challenge the sufficiency of evidence in Count I regarding the element of "movement" on direct appeal. See Petition at 2. Petitioner contends that there was insufficient evidence to support a finding of movement under California Penal Code Section 209(b)(2) because: (1) the distance that the victim was moved (i.e. fifteen feet) "was minimal"; (2) the distance did not make detection less likely; and (3) the tree did not shield the victim. Id.

The Superior Court found that appellate counsel's decision to not challenge the sufficiency of evidence as to Count I, did not prejudice Petitioner. See Petition at 21. The Superior Court found that there was no prejudice because Kings County Sheriff's Deputy Chris Berna's testimony at trial confirmed the victim's recollection of having been pulled behind a tree some 15 feet away from the original area of the attack. See Petition at 20-21 (Superior Court's March 10, 2008 Opinion, citing to 2 Record Transcript ("RT") 171-172).[4] Based on a review of the record, the Court finds that the Superior Court's determination that Petitioner had not established prejudice was not an unreasonable application of Strickland.

In order to bring a successful ineffective assistance of counsel claim, Petitioner must establish both components of the Strickland standard: (1) that counsel's advice fell below an objective standard of reasonableness, 466 U.S. at 687 88; and (2) that he was prejudiced by counsel's deficient performance, Id. at 693 94. In order to establish prejudice, a petitioner "must

---

[4] 2RT 171 172 contains Deputy Berna's trial testimony. When asked what the victim told Deputy Berna initially on the day of the incident, Deputy Berna testified as follows: "Initially, she had been pulled down the ground in the first area from behind. She was eventually drug [sic], which we determined to be approximately 15 feet behind that tree . . ." See Petition at 37.

9

show a reasonable probability that, but for his counsel's unreasonable failure [to raise a certain issue], he would have prevailed on appeal." Smith, 528 U.S. at 285.  A court addressing a claim of ineffective assistance of counsel need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong.  Strickland, 466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

In the instant matter, there is not a reasonable probability that if appellate counsel had raised an insufficiency of evidence claim regarding Count I (California Penal Code § 209 (b)(2)), that Petitioner would have prevailed on appeal.  See Smith, 528 U.S. at 285; Miller, 882 F.2d at 1434 (appellate counsel did not provide ineffective assistance of counsel for failing to present claim for which there was no likelihood of success).  Although Petitioner contends that there was not enough evidence to support a finding of movement under California Penal Code § 209 (b)(2), the evidence presented at trial did provide a rational basis for the jury to find that California Section Penal Code § 209(b)(2)'s requirements were met.  A finding of "movement" of the victim for purposes of Count 1 is one where "the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense."  See Cal. Penal Code § 209(b)(2).  As described more fully below, there was sufficient evidence presented at trial, including the testimony of Deputy Berna and the victim, and photographic evidence, to allow a jury to find that the distance and the area of the park that the Petitioner moved the victim did increase the risk of harm to the victim.

First, Deputy Berna testified at trial that the victim informed him that: "Initially, she had been pulled down the ground in the first area from behind.  She was eventually [dragged], which we determined to be approximately 15 feet *behind that tree* . . ." See Petition at 37  (emphasis added).

Second, the victim also "drew X's on a photograph showing where [Petitioner] dragged her through the park.  This photograph and another photograph were admitted into evidence showing the area where defendant initially attacked [the victim] and showing disturbed grass,

1  dirt, and leaves at the spot defendant dragged [the victim]." Id. Regarding this photographic

2  evidence of the scene of the attack, Deputy Berna testified as follows:

> Q: [D]eputy Berna I am going to show again what is marked as Exhibit 13, can you explain to me what    where that is?
>
> A: *That's the north end, or the rear* of Floyd Rice Park.
>
> Q: Okay. And Exhibit 14 I am going to show you, did you in fact take that photograph?
>
> A: Yes, I did.
>
> Q: And what is this a photograph of?
>
> A: That's a photograph of disturbed grass dirt and leaves in the area where Jessica had been drug to.
>
> Q: Okay. Where is that in relationship to Exhibit 13, the one I just showed you, where in relationship to that is this Exhibit 14?
>
> A: Do you want me to point on there and show you.
>
> Q: Well, actually let me give you [a] marker, let me get a different [color], so that you can mark where you actually took that from. Where you exactly took that photograph?
>
> A: The initial spot of the disturbed area would be right about in this area.
>
> Q: Okay. So that's close to the center of Exhibit 13.
>
> A: And *approximately 15 feet northeast of that back here in this area behind the fence. And behind the tree* is where the second photo of the disturbed grass direct against the fence, that's the second photo.
>
> Q: Oh, and do you want to mark those two areas for me. And that for the record is by the fenced area    well, the first X is in the lower left hand area, the second X probably dead center in Exhibit 13. And these areas were shown to you by Jessica?
>
> A: Yes they were.
>
> Q: Okay. And she stated that initially, what exactly did she tell you?
>
> A: Initially, she had been pulled down to the ground in the first area from behind. She was eventually [dragged], which we determined to be approximately 15 feet *behind that tree* where she was attached.

See Petition at 171-172 (emphasis added).

Third, the victim testified that "she told Deputy Berna that [Petitioner] first grabbed her in the open area of the park and then pulled her 15 feet away *to the back of the park* toward a fence and *behind a tree*." See Torres, 2007 WL 2812582 at *1-3 (emphasis added).

Given Deputy Berna's testimony, the victim's testimony, and the photographic evidence,

that indicated that the victim was moved 15 feet from an open area in the park towards the back of the park and sexually assaulted behind a tree, there was sufficient evidence for a jury to find that this movement increased the risk of harm to the victim. Therefore, there is not a reasonable probability that Petitioner would have prevailed on appeal on his insufficiency of evidence claim. The Superior Court's conclusion that Petitioner failed to establish prejudice was not objectively unreasonable.

Accordingly, Petitioner is not entitled to habeas corpus relief on this ground.

### IV.     Review of Petitioner's Second Claim- Ineffective Assistance of Trial Counsel

Petitioner claims that his trial counsel was constitutionally ineffective for agreeing that "the crimes occurred" and only contesting "the identity of the attacker." See Petition at 5-7. There is no merit to this claim and the Superior Court's denial of Petitioner's ineffective assistance of counsel claim was not "objectively unreasonable."

### A.     State Appellate Court Decision

> From the Opening Brief in Court of Appeal, Case No. F050976, it appears that Petitioner's trial counsel went beyond a mistaken identity defense as to Count I and specifically attempted to challenge the People's theory of movement of the victim by eliciting testimony from King's County Sheriff's Department Deputy Tom Wilcox to the contrary. (Opening Brief, p.7, citing, 2 RT 179-181). In addition, without specific information from the trial to the contrary, the Court must assume that trial counsel's decision to admit to the occurrence of the attack in the face of accusations by a 15-year old developmentally disabled victim and medical testimony confirming physical injury consistent with the victim's allegations, to be a tactical decision. (People v. Weaver (2001) 26 Cal. 4th 876, 925-926 [reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel].)

See Petition at 20.

### B.     Applicable Law

As discussed more fully above in Section III. B., in order to establish a constitutional violation for the ineffective assistance of counsel, a defendant must demonstrate: (1) a deficient performance by counsel; and (2) prejudice to him. See Strickland, 466 U.S. at 687, 694. Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 689; United States v. Jeronimo, 398 F.3d 1149, 1155 (9th

Cir. 2005).

### C. Analysis

Petitioner argues that his trial counsel was constitutionally ineffective for only contesting "the identity of the attacker." See Petition at 5-7. The Superior Court found that trial counsel was not deficient because counsel went beyond a mistaken identity defense as to Count I. See Petition at 20. Based on a review of the record, the Court finds that the Superior Court's determination that trial counsel was not deficient was not an unreasonable application of Strickland.

In order to bring a successful ineffective assistance of counsel claim, Petitioner must establish that counsel's advice fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687 88. Here, as the Superior Court noted, "trial counsel went beyond a mistaken identity defense as to Count I and specifically attempted to challenge the People's theory of movement of the victim by eliciting testimony from King's County Sheriff's Department Deputy Tom Wilcox to the contrary." See Petition at 21. The trial record indicates that trial counsel impeached the victim with the testimony of Deputy Tom Wilcox who testified that the victim had told him that she had not been moved. Id. (citing to RT 179-181); Torres, 2007 WL 2812582, at *1-3. Therefore, the Superior Court's determination was reasonable.

Additionally, Petitioner asserts that his trial counsel was deficient for agreeing that "the crimes occurred." See Petition at 5-7. The Superior Court determined that "trial counsel's decision to admit to the occurrence of the attack in the face of accusations by a 15 year-old developmentally disabled victim and medical testimony confirming physical injury consistent with the victim's allegations, to be a tactical decision." See Petition at 20. The Superior Court's determination was a reasonable application of Strickland. See Petition at 20. A disagreement with counsel's tactical decisions does not provide a basis for declaring that the representation was constitutionally deficient. United States v. Mayo, 646 F.2d 369, 375 (9th Cir.1981) (per curiam). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690. Here, Patricia Driscoll, a registered nurse who conducted a sexual assault examination of the victim testified that she "saw

a tear at the posterior fourchette located at the base of the vagina. There were dirt and leaves around the pelvic area. The results of the examination were consistent with [the victim's] account of the sexual assault." See Torres, 2007 WL 2812582, at *1-3. Petitioner's argument might have merit if he were able to show in the record that the choice made by his counsel to not challenge the occurrence of the attack was the product of inadequate preparation. At present, Petitioner's allegations amount to nothing more than a difference of opinion with respect to trial tactics. That alone generally does not constitute a denial of effective assistance of counsel. See United States v. Kearney, 560 F.2d 1358, 1368 (9th Cir. 1977). Therefore, the Superior Court's decision was not "objectively unreasonable."

Accordingly, Petitioner is not entitled to habeas corpus relief on this ground.

V.     Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides that a circuit judge or judge may issue a certificate of appealability where "the applicant has made a substantial showing of the denial of a constitutional right." Where the court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 326; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338. In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable; thus Petitioner's claim is not deserving of encouragement to proceed further. Consequently, the Court hereby denies a certificate of appealability.

**ORDER**

Accordingly, the Court ORDERS that:

1. The petition for writ of habeas corpus is DENIED WITH PREJUDICE;
2. The Clerk of the Court is DIRECTED to enter Judgment for Respondent; and
3. A Certificate of Appealability is DENIED.

IT IS SO ORDERED.

Dated: **May 12, 2011**          /s/ **Dennis L. Beck**
                                 UNITED STATES MAGISTRATE JUDGE